**Affirmed and Memorandum Opinion filed March 12, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00143-CV

---

## IN RE THE COMMITMENT OF TIMOTHY WAYNE STONECIPHER

---

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 608785Z**

---

## M E M O R A N D U M   O P I N I O N

The State filed a civil petition to commit appellant Timothy Wayne Stonecipher for involuntary treatment and supervision as a sexually violent predator. Tex. Health & Safety Code §§ 841.001–.151. The jury found appellant is a sexually violent predator and the trial court rendered a final judgment and order of civil commitment. On appeal, appellant contends the evidence was legally and factually insufficient to support the jury's finding and the trial court erred in admitting evidence. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

In March 2017, prior to appellant's scheduled release from the Texas Department of Criminal Justice ("TDCJ"), the State of Texas filed a petition to commit appellant as a sexually violent predator. *See* Tex. Health & Safety Code §§ 841.001–.151. In reverse chronological order, the State alleged:

- Appellant was convicted in February 1992 of four charges of aggravated sexual assault of a child, an offense under Tex. Penal Code § 22.021, The offenses were committed in July 1988, October 1989, December 1989, and June 1990.

- Appellant was convicted in May 1987 of the offense of indecency with a child under Tex. Penal Code § 21.11(a) (1). That offense was committed in August 1986.

- Appellant was convicted in September 1983 in the State of Indiana of attempted child molesting, an attempted offense that contains elements substantially similar to the offense of indecency with a child under Tex. Penal Code § 21.11(a)(1). That offense was committed in May 29, 1983.

- Each of these offenses is a sexually violent offense as defined by Tex. Health & Safety Code § 841.002(8)(A).

- Appellant had been incarcerated for each of these convictions.

Further, the State alleged appellant was assessed by TDCJ and determined to suffer from a "behavioral abnormality," pursuant to Section 841.023(a). *Id*. The State asked the trier of fact to find appellant is a sexually violent predator and to commit him for treatment and supervision.

Testimony was given by appellant, Darrel Turner, M.D., a clinical psychologist, and Sheri Gaines, M.D, a psychiatrist. The jury found appellant is a sexually violent predator and the trial court rendered a final judgment and order of civil commitment.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues appellant contends the evidence is legally and factually insufficient to support the jury's finding.

### *Applicable Law and Standard of Review*

The Civil Commitment of Sexually Violent Predators Act ("SVP Act") provides for the civil commitment of persons determined to be a sexually violent predator ("SVP"). Tex. Health & Safety Code §§ 841.001–.151. Under the SVP Act, a person is an SVP if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). The commitment of a person as an SVP is a civil proceeding, *see In re Commitment of Fisher*, 164 S.W.3d 637, 645–53 (Tex. 2005), and the SVP Act requires the State to prove a person is a sexually violent predator beyond a reasonable doubt. Tex. Health & Safety Code § 841.062(a).

Because the State is required to prove this element beyond a reasonable doubt, we review an appeal from such a proceeding using the same legal-sufficiency standard applicable to criminal cases. *See In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Under this standard, we review the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found, beyond a reasonable doubt, the elements required for commitment. *Id*. The jury is the sole judge of the witnesses' credibility and of the weight to be given to their testimony. *Id*. We review the factual sufficiency of the evidence by considering all the evidence in a neutral light and asking whether

3

a jury was rationally justified in finding that a person is an SVP beyond a reasonable doubt. *See id*. Under this standard, we consider "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id*.

### Issue

Appellant challenges only a portion of the second element—that he suffers from a behavioral abnormality. *See* Tex. Health & Safety Code § 841.003. A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). Appellant argues that the testimony of the State's witnesses focused on appellant's past behavior "and ignored the insurmountable evidence" that appellant did not suffer from a behavioral abnormality at the time of trial. Appellant contends "[w]hile the facts may prove that [appellant] may have had a behavioral abnormality 27 years ago, it does not support a conclusion that [appellant] suffers from a behavioral abnormality at the time of his civil commitment trial."

### Relevant Evidence

1.     Appellant's testimony

Appellant testified that he was physically, emotionally, and sexually abused as a child. He has attempted suicide approximately six times. When questioned about the offenses for which he was convicted, appellant repeatedly equivocated as to his

guilt, despite having pled guilty in each case. Appellant testified that all his offenses were alcohol-related crimes.

Appellant stated that he has changed in the past twenty-seven years. Appellant testified that he is now impotent and has no sex drive or sexual fantasies. He has no attraction to women and denied ever being sexually attracted to children. Appellant testified that shortly after his most recent conviction, he requested information about an orchiectomy, but he did not believe he needed the procedure to avoid re-offending. Appellant testified that he was not afraid he would reoffend because of the programs, including sex offender treatment ("SOTP") and counseling, in which he has participated.

Appellant testified that he wrote a children's book titled "Ghost Town" after his first grandson was born. It is the first of a four-part adventure series that he has entirely drafted and is intended to be a 52-book series. Appellant has also written for "The Echo," a state-published newspaper for the prison population. He testified that he writes to encourage inmates.

2.     Dr. Turner's testimony

Dr. Darrel Turner, a forensic psychologist, received information about appellant's criminal history and his offenses from police departments, investigators, district attorneys' offices, victim statements, and appellant's own statements. Turner also reviewed the records of appellant's behavior in prison, the programs he has participated in while incarcerated, and prior interviews. Based on the records, his interview with appellant, and his education, training and experience, Turner's clinical opinion is that appellant suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.

Turner testified two risk factors exponentially increase an offender's risk of reoffending—the offender's degree of anti-social traits and sexual deviance. When both factors are present in the same person, as in appellant's case, the risk of offending is drastically higher.

Turner defined sexual deviance as a sexual attraction to someone who is not "basically a same age, consenting peer." Turner testified that appellant "is sexually deviant today" because appellant suffers from pedophilia—a sexual attraction to prepubescent children, in his case boys. Pedophilia, now termed pedophilic disorder, is a chronic condition. Turner was confident appellant's pedophilic disorder, as displayed when appellant was offending, still exists. Turner also diagnosed appellant with adult anti-social behaviors.

Appellant told Turner that when appellant was approximately twelve years, he first noticed and was concerned about his sexual attraction to children. Turner testified sexual attraction to younger children generally begins at puberty, which is consistent with the profile of a pedophile.

Turner considered appellant's convictions in forming his opinion that appellant has pedophilic disorder, sexual deviance, and a behavioral abnormality. Appellant's conviction arising from an incident at a bowling alley demonstrated risk factors, because the two male victims were prepubescent and strangers to appellant, appellant was intoxicated, appellant tried to sexually offend against them both at the same time, appellant used physical restraint, and the incident happened in a public place where the victim's parents were present. Turner also testified that sexual offenders whose victims are male have a higher degree of sexual deviance, and are at a higher risk to reoffend than those whose victims are female, and that when the sexual offense is against someone the sexual offender has known for less than twenty-four hours it indicates a brazenness and level of anti-social behavior that

6

increases the overall risk of reoffending beyond that of a sexual offender whose victim is a member of their own family or circle of acquaintances. Also, Turner opined that sexual offenders who are intoxicated when they commit a sexual offense are at a higher risk of reoffending than those who are not intoxicated. Thus, appellant's state of intoxication at the time of the sexual offense increases his risk of reoffending. The sexually offending behavior subjected appellant to a much higher risk of getting caught, demonstrating the degree of impulsivity, as well as appellant's need to act on his sexually deviant urges.

According to Turner, appellant has been inconsistent in his statements about that sexual offense, which indicates that he is not being honest. Turner testified that according to appellant, appellant has some memory deficits, but appellant can give details about a lot of his life, except for the actual sexual offenses. Turner testified that he believes appellant chooses not to tell the truth when it behooves him, or when it makes him appear less deviant.

Appellant was convicted and placed on probation for the sexual offense that occurred at the bowling alley and committed another sexual offense while on probation. A sexual offender who is caught, punished, and sexually reoffends while on probation is at high risk to reoffend.

Appellant gave a statement to police about the sexual offense he committed while on probation for the sexual offense at the bowling alley. Turner found risk factors in that statement. The victim was a three-year old boy, the sexual offense occurred in appellant's home where other children were present, and appellant engaged in victim-blaming and did not take responsibility for his actions. Appellant was convicted of that sexual offense and served two years of a six-year sentence. When appellant was again released on probation, he was under more supervision than before and had to engage in SOTP.

7

Within a month or two, while on probation, appellant sexually reoffended against three prepubescent boys. Those sexual offenses, which underlay the judgment and order of civil commitment being appealed, are further evidence of a behavioral abnormality and a high risk to reoffend. Appellant gained access to the three prepubescent boys through his own children, who, at appellant's request, invited the victims to his house. Appellant engaged in classic grooming behaviors of giving gifts and using threats if the victims told anyone of the abuse. The evidence of grooming is also a risk factor for reoffending and indicates a degree of anti-social behavior.

Turner was aware that appellant claims to have no sex drive. Turner does not believe appellant was honest. Appellant told Turner that even though he is impotent, he masturbates once every six months. Turner believes appellant has a very low sex drive for adult women because he is an exclusive pedophile—a person who is only attracted to prepubescent children. According to Turner, that is why appellant only had sex with his wife on a handful of occasions and finds the idea of sex with her unpleasant.

Turner testified the notes reflect appellant has been in treatment for about a year. The initial notes were not good, but the most recent notes have been positive. Appellant is participating and providing feedback, and that is an improvement. However, appellant is not able to talk about the cornerstones of SOPT, such as his triggers, offense cycles, and why he was offending. Turner testified appellant is sexually attracted to children and is anti-social enough to act on his attraction. Appellant displays a "real lack of insight into why he's offending, the urges that are pushing him to offend, and just, quite frankly, the fact that this is his source of sexual attraction."

Turner testified appellant told Turner that appellant is writing children's books to help children recognize their own value. According to Turner, this is akin to grooming victims. Turner testified it is the same motivation that, according to appellant, led directly to his sexual offending in the past. The fact that appellant is emotionally identifying with children through these books is another risk factor for sexually reoffending. Research shows that pedophiles who emotionally identify with children are at a higher risk to sexually reoffend. Turner testified the amount of time appellant is spending writing children's books with themes involving young boys, given his identification throughout his life with troubled boys, is not good. Turner stated, "[t]his is a career child molester writing children's books. That's a problem."

Turner did not see evidence that appellant had been involved in many courses or self-help programs in prison; there were only a few. Turner testified appellant needs more treatment. Appellant needs insight into his sexual deviance and to learn more about his triggers and high-risk situations. Appellant must also learn more about the impact his sexual offenses have on his victims. As an example, Turner noted that appellant told Gaines, when asked what effect the offending had on the boys at the bowling alley, that they have grown up and gotten over it. Turner concluded appellant does not have much insight into how these sexual offenses really impacted the boys. Although appellant's increased participation is a positive factor, it is not enough at this point. Turner testified appellant "certainly needs more treatment."

Turner diagnosed appellant with severe and sustained alcohol use disorder. Appellant used alcohol, marijuana, cocaine, and acid before he was imprisoned. Appellant's history of alcohol and substance abuse increases his risk of reoffending.

Appellant admitted to using synthetic marijuana in prison within the last few years. Turner testified the recent drug use increases appellant's risk of reoffending.

9

Turner concluded appellant has a high risk of reoffending, based on appellant's behavioral abnormality, which makes him likely to engage in predatory acts of sexual violence.

3.     Dr. Sheri Gaines' testimony

Dr. Sheri Gaines, a forensic psychiatrist, evaluated appellant by reviewing records—police reports, district attorneys' reports, prison records, medical records, victim statements, and Turner's evaluation—and interviewing him. Gaines also reviewed appellant's deposition. Gaines testified that appellant has average intellectual functioning. Generally, appellant was cooperative.

Gaines diagnosed appellant with pedophilic disorder, which she described as having sexual urges, fantasies, desires or behaviors directed at prepubescent children for six months or longer, that have caused problems in the patient's life. Appellant's sexual-offending history supports Gaines' diagnosis.

Gaines testified that Pedophilic disorder is a chronic condition that can lessen over time. Sex-offender treatment is not a cure but can teach someone to manage their deviant sexual behaviors.

Gaines did not believe appellant's condition has lessened over time based on the records she reviewed, her interview with him, his long history of behaviors consistent with pedophilic disorder, the number of victims, his thought processes, and his difficulty understanding why he has these behaviors. Gaines' opinion is that appellant does have a behavioral abnormality that is a congenital or acquired condition, and that has affected his emotional or volitional capacity.

Gaines testified that appellant has been unable to control his deviant sexual urges and has acted on them. Despite suffering severe consequences from this deviant behavior, he has been unable to control it. Gaines found appellant to possess

many antisocial personality traits and agrees that he has substance abuse disorder. The substance abuse is significant because it lowers appellant's inhibitions sufficiently for him to act on his deviant sexual urges. Appellant showed a lack of empathy, remorse, understanding or insight as to how his offenses affect his victims. In Gaines' opinion, appellant does not understand why he sexually offended against those boys, which is another indicator of his poor insight.

Appellant told Gaines that he lured the children in with care and compassion. Gaines was alarmed that appellant is writing children's books because he is a pedophile and his technique is to ingratiate himself with young boys, gain their trust, and depict himself as a hero and savior to groom his victims so he can abuse them. Gaines also was concerned because the Internet could be used as a tool to recruit and engage children in the future. Gaines testified appellant has a long way to go to understand his sexual deviance and has minimized his behavior rather than acknowledge it as a problem.

Appellant told Gaines that he has no sex drive and has been impotent for many years. She doubts the truth of that based on what appellant has told other examiners. Gaines noted that appellant's target population is young boys, but because of his imprisonment has been deprived access to more victims.

Appellant was ordered to undergo substance abuse treatment while under supervision and was not incarcerated but was not compliant. Appellant did not have any specific plans for his release, other than to publish children's books on the Internet, which Gaines believes is a very bad idea. Appellant had a hard time articulating what he had learned, identifying his triggers, or describing his offense cycle. According to Gaines, appellant appeared to have just begun the process of learning about his sex offending.

Gaines testified that appellant's sexual deviancy and his antisocial traits combined to make him likely to sexually reoffend, and to be a danger to society. Gaines testified that she found appellant currently suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

*Analysis*

Our review of the record does not reveal "insurmountable evidence" that appellant no longer suffers from a behavioral abnormality. To the contrary, both Turner and Gaines testified that appellant had, and still has, a behavioral abnormality. Although appellant denied being sexually attracted to children currently, he pled guilty to sexually assaulting five prepubescent boys and told Turner there were at least three victims for which he was not caught. In the past, appellant abused alcohol and drugs. In prison, he resumed abusing drugs—synthetic marijuana. Despite the abuse he suffered as a child, which he can still recall in graphic detail, appellant believes the children he sexually abused have "grown up and gotten over it." Appellant has been diagnosed with exclusive pedophilic disorder and anti-social behavior, both of which put him at risk to sexually reoffend. Appellant's convictions demonstrate an escalation of the offending behavior and a heightened risk of getting caught, which also puts him at risk to sexually reoffend.

Appellant's testimony at trial fails to reflect that he accepts responsibility for his actions, understands his sexual deviance, or appreciates how to avoid reoffending sexually in the future. The testimony of appellant and Turner indicates that despite appellant's lengthy imprisonment, he has only been in treatment for sexual deviance for about a year. Both Turner and Gaines confirm that appellant needs more treatment and is likely to sexually reoffend because he currently suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Considering all of the evidence in the light most favorable to the verdict, we conclude the jury could find beyond a reasonable doubt that appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Additionally, in considering all of the evidence in a neutral light, we conclude the jury could find beyond a reasonable doubt that appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Appellant's first and second issues are overruled.

### ADMISSION OF EVIDENCE

Appellant's third issue argues the trial court erred in overruling his Rule 403 objections. *See* Tex. R. Evid. 403. Rule 403 provides the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Trial courts have extensive discretion in evidentiary rulings, and we will uphold such rulings if they are within the zone of reasonable disagreement. *In the Commitment of Grice,* 558 S.W.3d 323, 327 (citing *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018)). Furthermore, even if the trial court's admission of evidence is erroneous, the error is harmless if the ruling probably caused the rendition of an improper judgment. *Grice,* 558 S.W.3d at 329; Tex. R. App. P. 44.1(a). "A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Id.* (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

In his brief, appellant refers to four objections in the record. The first ruling appellant complains of occurred during the following exchange:

> [The State] Okay. Was your intent with Dustin and Bobby and Dale to show them that they had value?
>
> [Appellant] That's not a fair question. I'm not going to answer that

question because you're turning -- take what I'm doing and revert it. I'm not answering that question. I'm not answering that question.

[Defense Counsel] Objection. This is harassing. It's asked and answered. And under 403, there's no probative value.

The record reflects that after the trial court overruled the objection, the State asked a different question.

The third objection referred to in appellant's brief was made following a back-and-forth exchange between the State, the trial court, and appellant as to whether appellant was being nonresponsive after the State asked whether he "pulled Dustin's pants down and rubbed his penis?" No objection was made by the defense when the question was asked. Appellant refused to answer the question, prompting an objection by the State, and an objection of relevance from the defense. After the trial court sustained the State's objection and overruled the defense relevance objection, proceedings ended for that day. The following day the State resumed questioning appellant about his prior convictions. This is when the fourth ruling appellant complains of occurred. The State asked appellant, "Isn't it true that you forced your penis inside of Dustin's mouth?" Counsel made a Rule 403 objection. The objection was overruled. The record reflects appellant did not answer the question, although he did answer that he was convicted of causing Dustin's sexual organ to have contact and penetrate his mouth, which is a different question.

Because appellant did not answer these questions, no evidence was introduced after counsel's Rule 403 objection. Accordingly, any error in overruling the objection is harmless. *See* Tex. R. App. P. 44.1(a)(1); *Grice,* 558 S.W.3d at 329.

The second objection appellant refers to was made after the State questioned appellant about a book he had published in the past two years.

14

[The State] And that was a book that had graphic detail about killing fellow inmates, right?

[Defense Counsel] Objection, relevance and unfairly prejudicial.

After the trial court overruled the objection, appellant testified as follows:

> That particular story, *the Making of a Murderous Mind* is a fictional story. It is a story that I was able to explain how prison can cause a man who would never before think of harming an individual -- you could be pushed to a point of breaking where people push you and people step on you and people spit in your face. Yes, you got a person in prison can be drove to taking – somebody can make you consider murdering them. But it was a fictional story. So, it had nothing to do with persons or places in my own personal life. It was just a fictional story.

Appellant contends this evidence was prejudicial because it suggested appellant "occupied his time thinking of . . . murdering individuals."

The record reflects that appellant's counsel questioned Turner about the book. When asked if there was a moral at the end of the story, Turner stated, "I think it was something just to the effect of that it wasn't a good thing to slit another inmate's throat with a homemade razor blade knife." Accordingly, any error by the trial court in allowing appellant to testify that the character in his book considered murdering people is harmless. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (error is deemed harmless and is waived if same or similar evidence is introduced elsewhere without objection); *see also State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (any error in admission of evidence is likely harmless if it is cumulative of other evidence); *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *7 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.).

For the reasons set forth above, we conclude the trial court's rulings did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a);

*Grice*, 558 S.W.3d at 329. Any error in those rulings is therefore not reversible. Appellant's third issue is overruled.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment and order of civil commitment.


/s/    Margaret "Meg" Poissant
       Justice


Panel consists of Justices Christopher, Hassan and Poissant.