Opinion filed January 30, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00010-CV

_____

## IN RE COMMITMENT OF GUAQUIEN ROZALEZ

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 23-01-19042**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a civil commitment order in which the State sought to commit Appellant, Guaquien Rozalez, for treatment and supervision as a sexually violent predator pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (the Act). *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (West 2017 & Supp. 2025). The jury found beyond a reasonable doubt that Appellant is a sexually violent predator, and the trial court entered a final judgment and commitment order committing Appellant for treatment and supervision. *See* HEALTH & SAFETY § 841.081. In three issues Appellant contends that the trial court

erred in allowing an expert witness to testify about unadjudicated offenses, that the evidence is legally and factually insufficient to support the jury's finding that he is a sexually violent predator, and that the trial court abused its discretion in refusing his requested jury instruction. We affirm.

*Background Facts*

On January 4, 1988, Appellant was convicted of sexual assault in the third degree in Natrona County, Wyoming following his plea of guilty to the offense. *See* WYO. STAT. ANN. § 6-2-304 (West 1984). Appellant was placed on supervised probation for two years and ordered to live at the Community Alternatives of Casper. While on probation and living at the facility, Appellant tested positive for marihuana and was arrested for public intoxication. Appellant was placed on "escaped" status after he left the facility without permission and went to Texas. He further violated the conditions of his release by having contact with the victim. Appellant's probation was revoked, and he was sentenced to serve not less than two years nor more than three years in the Wyoming State Penitentiary. Appellant served his full sentence.

On April 14, 2005, Appellant pleaded guilty to the offenses of aggravated sexual assault of a child and indecency with a child by contact in Gaines County, Texas. *See* TEX. PENAL CODE ANN. §§ 22.021, 21.11 (West Supp. 2025). The trial court sentenced Appellant to a term of twenty years in the Institutional Division of the Texas Department of Criminal Justice for each conviction. Appellant was incarcerated at the time of his commitment trial for those offenses.

On January 31, 2023, the State filed a petition asserting that Appellant is a sexually violent predator. *See* HEALTH & SAFETY § 841.041. Appellant's civil commitment trial followed. *See id.* § 841.061.

The State called Dr. Jason Dunham to give his expert opinion on whether Appellant has a behavioral abnormality as defined in the Act. *See id.* § 841.002(2). Dr. Dunham is a licensed forensic psychologist with a Ph.D. in counseling psychology. He has over twenty years of experience in forensic psychology and has been conducting sex offender evaluations and risk assessments in Texas since 2005. Dr. Dunham opined that Appellant has a behavioral abnormality that renders him a sexually violent predator. *See id.* § 841.003(a).

Dr. Dunham explained that in his evaluation of Appellant, he was specifically asked to form an opinion on whether Appellant has a behavioral abnormality. Dr. Dunham defined a behavioral abnormality as a "congenital or acquired condition that affects a person's emotional or volitional capacity to the extent that that person becomes -- or predisposes the person to commit a sexually violent act to the extent that the person becomes a menace to the health and safety of others." As noted previously, Dr. Dunham opined that Appellant has a behavioral abnormality.

To reach this opinion, Dr. Dunham reviewed Appellant's records, conducted a Static-99R and PCLR test, and conducted a video conference interview with Appellant via computer on March 29, 2023. The interview lasted for one hour and thirty minutes, which Dr. Dunham testified was within the average range of length of time for a risk assessment evaluation.

Dr. Dunham testified that Appellant has three sex offense convictions. Appellant's first sex offense conviction was in 1987 in Wyoming when he was approximately twenty-five years old. Appellant told Dr. Dunham that the victim was his "girlfriend" and that he had a relationship with her. Appellant first met the victim when she was nine years old, and when she was eleven, Appellant began to "see her differently." They began having sex when the victim was twelve years old. Appellant told Dr. Dunham that he still loves the victim and that he does not regret

anything.  Dr. Dunham identified risk factors from the first conviction as Appellant's sexual attraction to someone that was young and offending against someone not related to him.  Dr. Dunham explained that most sexual offenders do not go outside of the family to offend.

Appellant's second and third sex offense convictions occurred in September 2003 and involved the same victim, Appellant's cousin.  Appellant was forty-one years old at the time of the offenses, and the victim was nine years old.  Appellant would have the victim sit on his lap, and he would let her drive his pickup.  One day while the victim was sitting on his lap driving the pickup, Appellant put his hand down her shirt and rubbed her breasts.  Appellant also pulled the victim's pants down and rubbed her vagina.  Appellant told the victim not to tell anyone what had happened.  On another occasion, the victim was in Appellant's bedroom lying on the bed.  Appellant put his hand down her pants and rubbed her buttocks.  On yet another occasion in Appellant's bedroom, he pulled down the victim's pants and put his finger inside of her vagina.  Appellant was convicted of aggravated sexual assault of a child and indecency with a child by contact.

Appellant would not discuss the second and third convictions with Dr. Dunham.  He did not admit or deny committing the offenses.  Instead, Appellant told Dr. Dunham: "The past is the past.  I don't think about the past.  I only think about the future."  Dr. Dunham described Appellant's most important risk factor from the second and third offenses as persistence after punishment, which he explained is reoffending after being convicted and punished for the first offense.  He also stated that the escalation in attraction to children was a risk factor because the second victim was younger than the first victim.  He further noted that it was a risk factor that Appellant groomed the victim by having her sit on his lap.

4

Dr. Dunham testified that he uses the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) in making a diagnosis. The DSM-5 includes diagnoses for sexual deviancy. Dr. Dunham defined sexual deviancy as "abnormal sexual behavior that causes some type of impairment, or some kind of problem within that person, or with society, or to somebody else." Dr. Dunham diagnosed Appellant with pedophilic disorder based upon his sexual attraction to children. Dr. Dunham testified that Appellant exhibited sexually deviant behavior because he had sex with one of the victims when she was thirteen years old and because he was sexually attracted to both child victims. According to Dr. Dunham, pedophilic disorder is chronic and not likely to change.

Dr. Dunham also diagnosed Appellant with antisocial personality disorder. He said that persons with antisocial personality disorder break rules, violate norms of society, and lack concern for others. Dr. Dunham based this diagnosis on Appellant's use of drugs and alcohol beginning at age nine, getting kicked out of school for fighting, and his adult criminal history involving assaultive behavior. He noted that Appellant had assaulted a police officer and that he had tried to run over a police officer in a vehicle. He noted that Appellant also exhibited violence toward women including a former girlfriend and his ex-wife. Dr. Dunham also considered that Appellant has no concern for others, including his family. He testified that Appellant did not want to have contact with his son and did not pay child support for his son. In addition, Dr. Dunham considered Appellant's history of disciplinary action in prison in his diagnosis. Dr. Dunham testified that Appellant had multiple disciplinary actions, including threatening a correctional officer, and that Appellant showed no remorse for his actions, which is also indicative of antisocial personality disorder.

Dr. Dunham conducted the PCLR test on Appellant to determine his level of psychopathic traits. The PCLR test is generally accepted in the field of forensic psychology. Dr. Dunham scored Appellant at 27.4, which puts him in the "high range of psychopathy." Because of his score on the PCLR, Dr. Dunham described Appellant as having an antisocial personality disorder with psychopathy. Based upon his score on the PCLR and his sexual deviancy, Dr. Dunham determined that Appellant is at a high risk to reoffend sexually.

The Static-99R test measures a person's risk level to reoffend. Dr. Dunham scored Appellant at a one on the Static-99R test, meaning that he is within an average risk category of being convicted of a sex offense again. However, Dr. Dunham believed that the Static-99R underestimated Appellant's level of risk. Dr. Dunham believed that Appellant is "above average risk" to reoffend. According to Dr. Dunham, the Static-99R was not a good indicator of Appellant's risk because it does not measure psychopathy and it does not measure current attitudes or beliefs. In addition, Dr. Dunham explained that Appellant scored in the average range because of his age. Appellant received a three-point deduction because he is over the age of sixty.

Dr. Dunham identified sexual deviancy and antisocial personality as categories of risk to reoffend. Dr. Dunham found both of those to be present in Appellant. Dr. Dunham opined that Appellant is at an elevated risk of reoffending because he does not recognize, or does not care about, his problem, he is an untreated sex offender, and he does not have any tools in place to keep him from reoffending. Treatment is a significant protective factor, but Appellant has not participated in sex offender treatment, and he does not think he needs treatment. Appellant does not view himself as a sex offender.

In summary, Dr. Dunham determined that Appellant has a behavioral abnormality based upon the combination of his pedophilic disorder and psychopathy. Dr. Dunham testified that because of those conditions, Appellant had a hard time controlling his desires and thoughts, which put him at an elevated risk to commit sex offenses in the future.

Appellant also testified at trial. He described his first victim as his girlfriend even though he acknowledged that he was approximately twenty-five years old and she was around thirteen years old at the time. Appellant said that he met the victim when she was nine years old, and he "started thinking about her in a different way" when she was eleven years old. He said they were in a relationship for two years and that they planned to get married. Appellant admitted to having sex with the victim three to four times. Appellant explained that he was in love with the victim and did not view her as a child. Appellant testified that he does not regret anything about his relationship with the victim and only regrets that he cannot see her.

Appellant denied sexually abusing the second victim. He acknowledged that he let her drive his pickup but said that she only sat on "one leg." Appellant recognized that he previously admitted to sexually abusing the second victim but claimed that he did so because it was what everyone wanted to hear.

*Analysis*

*Unadjudicated Offenses*

In his first issue, Appellant argues that the trial court erred in allowing Dr. Dunham to testify regarding unadjudicated offenses reported by Appellant's ex-wife. At trial, the State sought to question Dr. Dunham about unadjudicated offenses involving Appellant's stepdaughters and his ex-wife. Appellant objected that the testimony should be excluded under Rules 403 and 705 as being "more prejudicial." *See* TEX. R. EVID. 403, 705. The trial court sustained the objection as to any

7

testimony about allegations involving Appellant's stepdaughters, but it allowed testimony concerning allegations made by Appellant's ex-wife.

Dr. Dunham testified that he reviewed information regarding Appellant's ex-wife that was pertinent in forming his opinion on whether Appellant is a sexually violent predator. He testified that Appellant's ex-wife made statements that pointed toward Appellant's antisocial personality. In that regard, Appellant's ex-wife previously reported that Appellant was both physically and sexually violent with her. Appellant's ex-wife stated that Appellant kicked her when she was pregnant with their son and that he pushed her down the stairs. She also alleged that Appellant "anally and vaginally raped her."

A trial court's rulings in admitting or excluding evidence are reviewable under an abuse-of-discretion standard. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015); *In re Commitment of Guest*, No. 02-19-00295-CV, 2021 WL 1245087, at *7 (Tex. App.—Fort Worth Apr. 1, 2021, pet. denied) (mem. op.). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Under Rule 705 of the Texas Rules of Evidence, "an expert in a SVP Act civil commitment proceeding may disclose the underlying facts or data upon which the expert bases his or her opinion if it is of a type of information relied on by experts in the field when forming opinions on the subject." *Guest*, 2021 WL 1245087, at *8 (quoting *In re Commitment of Cain*, No. 02-18-00043-CV, 2018 WL 5993335, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.)).

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly

presenting cumulative evidence." TEX. R. EVID. 403. "Factors considered when applying the Rule 403 balancing test 'include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence.'" *In re Commitment of Stuteville*, 463 S.W.3d 543, 555–56 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied)).

Appellant asserts that the prejudicial effect of Dr. Dunham's testimony outweighed its probative value. He bases this argument in part on the fact that no charges were brought with respect to the claims made by his ex-wife, and that she was likely biased against him. Appellant also contends that the unadjudicated offenses reported by Appellant's ex-wife were "highly prejudicial."

Unadjudicated offenses are not necessarily more prejudicial than probative when they serve the purpose of explaining the basis of an expert's opinion in a civil commitment proceeding. *See Guest*, 2021 WL 1245087, at *8 (citing *Stuteville*, 463 S.W.3d at 555–56) (holding trial court did not abuse its discretion by admitting evidence of the defendant's uncharged and alleged sexual offenses against other victims for limited purpose of explaining basis of expert's opinion whether defendant suffered from a behavioral abnormality).

Here, the State was required to prove that Appellant is a sexually violent predator. To do so, the State had to show that Appellant suffers from a behavioral abnormality that makes him more likely to engage in a predatory act of sexual violence. *See* HEALTH AND SAFETY § 841.003(a)(2). Dr. Dunham relied on, among other things, the information reported by Appellant's ex-wife in forming his opinion that Appellant suffers from a behavioral abnormality and is a sexually violent predator. *See In re Commitment of R.A.F.*, No. 10-22-00102-CV, 2022

WL 17341518, at *3 (Tex. App.—Waco Nov. 30, 2022, pet. denied) (mem. op.). Dr. Dunham's testimony about the underlying facts helped the jury weigh his opinion and decide whether they agreed that Appellant had a behavioral abnormality that would predispose him to commit sexual offenses. *See id.* (evidence about unadjudicated offenses had probative value and assisted the jury in understanding expert testimony regarding whether the person suffered from a behavioral abnormality); *Guest*, 2021 WL 1245087, at *8.

Our sister courts have repeatedly upheld a trial court's decision to allow an expert to testify about the details of unadjudicated offenses in SVP cases. *See, e.g.*, *R.A.F.*, 2022 WL 17341518, at *3; *Guest*, 2021 WL 1245087, at *8; *see also In re Commitment of Johnson*, 613 S.W.3d 613, 615 (Tex. App.—San Antonio, 2020 pet. denied); *In re Commitment of Renshaw*, 598 S.W.3d 303, 306 (Tex. App.—Texarkana 2020, no pet.); *Stuteville*, 463 S.W.3d at 555. In addition, the trial court instructed the jury to consider the testimony only for the purpose of showing the basis of Dr. Dunham's opinion and not to consider the testimony as evidence to prove the matter asserted. *See* TEX. R. EVID. 705(d). When the trial court gives the jury a limiting instruction, we presume the jury followed it. *See In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.).

The record does not show that the trial court abused its discretion by determining that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Guest*, 2021 WL 1245087, at *9. We overrule Appellant's first issue.

*Sufficiency of the Evidence*

In Appellant's second issue, he contends that the evidence is legally and factually insufficient to support a finding beyond a reasonable doubt that he is a sexually violent predator.

The Act provides for the civil commitment of sexually violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." HEALTH & SAFETY § 841.001.

A person is a sexually violent predator if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). The legislature defines a "repeat sexually violent offender" as a person who is convicted of "more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id.* § 841.003(b). "Sexually violent offense" is defined in the Act to include enumerated Penal Code offenses. *Id.* § 841.002(8). Finally, "[b]ehavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

A commitment proceeding under the Act is a civil case that incorporates the "beyond a reasonable doubt" burden of proof from criminal cases. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020); *In re Commitment of Stratton*, 637 S.W.3d 870, 875 (Tex. App.—Eastland 2021, no pet.). Thus, to civilly commit a person as a sexually violent predator, the State must prove the above elements beyond a reasonable doubt. *In re Commitment of Fisher*, 164 S.W.3d 637, 639–41 (Tex. 2005). We use the same legal sufficiency standard that we use in criminal cases: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

11

the crime beyond a reasonable doubt." *Stoddard*, 619 S.W.3d at 674–75 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  In so doing, we assess the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the statutory elements required for commitment beyond a reasonable doubt.  *Id.*  The jury is the sole judge of the witnesses' credibility and of the weight to be given to their testimony.  *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.— Houston [14th Dist.] 2017, no pet.).

On appeal, Appellant asserts that the evidence is insufficient to support the jury's finding that he is a sexually violent predator because Dr. Dunham's testimony was "error ridden, biased[,] and contradictory," and that no rational factfinder could have determined beyond a reasonable doubt that Appellant was a sexually violent predator based upon Dr. Dunham's testimony.  He contends that Dr. Dunham incorrectly informed the jury of a basic fact regarding the data he reviewed, specifically that the Static-99R scoring was based upon reconvictions.  He also takes issue with Dr. Dunham's determinations that Appellant lacked remorse and was evasive.

We note that Appellant did not make a timely objection to the reliability of Dr. Dunham's opinion in the trial court.  Accordingly, to the extent he is challenging the underlying methodology Dr. Dunham used in evaluating Appellant for a behavioral abnormality, he was required to make a timely objection to preserve error. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004).  Moreover, even if the basis for Dr. Dunham's opinion was unreliable, we may consider his testimony as probative evidence in our legal sufficiency review. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("When a scientific opinion is admitted in evidence without objection, it may be considered

12

probative evidence even if the basis for the opinion is unreliable."); *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 786 (Tex. 2020).

There is no dispute that Appellant has at least two convictions for sexually violent offenses. *See* HEALTH & SAFETY § 841.002(8). Therefore, we must determine whether the evidence supports the jury's finding that Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a).

Dr. Dunham testified that Appellant had a behavioral abnormality at the time of his civil commitment trial because of his sexual deviancy and antisocial personality disorder. Dr. Dunham testified that Appellant has pedophilic disorder and that it is a chronic condition. He further testified that Appellant's antisocial personality disorder with psychopathy is a chronic condition. Dr. Dunham testified that because Appellant has both sexual deviancy and antisocial personality, he is at a high risk to reoffend. Dr. Dunham considered the most important risk factor that Appellant would commit another sexually violent offense to be that he reoffended after being punished for his first sexually violent offense.

Although Appellant contends that Dr. Dunham's testimony was error-ridden and contradictory, the jury was the "sole judge of the credibility of witnesses and the weight to be given to their testimony." *Stoddard*, 619 S.W.3d at 674 (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that Appellant is a sexually violent predator.

The standard of review for a factual-sufficiency review differs from the evaluation for legal sufficiency. A "factual sufficiency review is premised on consideration of the entire record." *Stoddard*, 619 S.W.3d at 674 (citing *In re A.C.*,

560 S.W.3d 624, 630 (Tex. 2018)). As with the legal sufficiency analysis, there is still an assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *Id.* at 674. "However, disputed evidence that a reasonable factfinder could not have credited in favor of the finding is treated differently" in a factual sufficiency analysis. *Id.* at 676. Thus, in sexually violent predator cases,

> where the burden of proof is beyond a reasonable doubt, the evidence is factually sufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the [sexually violent predator] finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met.

*Id.* at 674–75. A reviewing court's mere disagreement with the factfinder "as to the proper evidentiary weight and credibility cannot be the basis of a reversal on factual insufficiency grounds." *Id.* at 677.

Appellant contends that there is little evidence supporting a conclusion that he "cannot control a sexual impulse to commit a violent offense." However, the scope of our review is limited to whether the State proved the statutory elements of the Act—whether Appellant has committed two or more "certain enumerated sexually violent offenses" and whether Appellant "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *Stoddard*, 619 S.W.3d at 678. The Act does not require that a sexually violent predator must lack control over his sexual impulses, and we decline to address whether Appellant does. *In re Commitment of Ivie*, 687 S.W.3d 526, 540 (Tex. App.—Eastland 2024, no pet.); *see also* HEALTH & SAFETY §§ 841.002, 841.003.

The "undisputed facts" that Appellant contends are contrary to the verdict, are his age, "that he has an average risk to reoffend based on statistical data[,] and that,

other than the convictions themselves, there is no other history of sexual misconduct charges or credible accusations." The disputed facts upon which Appellant argues could not have been credited in favor of the verdict include that he lacks remorse and is a pathological liar. We note in this regard that these are not facts in dispute so much as contentions regarding the probative value of Dr. Dunham's testimony.

Because Appellant is over sixty, his score on the Static-99R test was three points lower. Dr. Dunham noted that Appellant's age is a protective factor. However, he did not find that Appellant's age reduced his risk to reoffend. Dr. Dunham also explained that the Static-99R was not a good indicator of Appellant's risk because it does not measure psychopathy, and it does not measure current attitudes or beliefs.

Appellant's lack of additional charges for sexual offenses aside from his convictions does not render the evidence factually insufficient. *See In re Commitment of Woods*, No. 02-19-00155-CV, 2020 WL 3969958, at *8 (Tex. App.—Fort Worth June 11, 2020, pet. denied) (mem. op.). Evidence that the appellant controlled his behavior for a majority of his life is of limited value in determining whether he has a condition causing a predisposition toward violent sexual conduct. *See id.* The predisposition does not need to be assigned a numeric value for there to be sufficient evidence to support the finding that a person is a sexually violent predator. *See id.*

As we have said, the jury was presented with evidence that the most important risk factor was that Appellant reoffended after being convicted and punished for a sexual offense. Appellant had not participated in sex offender treatment, and he does not think he needs treatment.

We have reviewed the entire record in accordance with the applicable standard of review. Any evidence contrary to the jury's verdict was not so significant that the

jury could not have found beyond a reasonable doubt that Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and that Appellant is a sexually violent predator. Having found the evidence legally and factually sufficient to support the jury's finding that Appellant is a sexually violent predator, we overrule Appellant's second issue.

*Jury Instruction*

In his third issue, Appellant argues that the trial court abused its discretion in failing to include his requested instruction in the trial court's charge. Appellant requested the following instruction be included in the charge:

> [Appellant] is presumed not to be a sexually violent predator. The allegation by the State that the respondent is a sexually violent predator creates no inference that he is a sexually violent predator at his trial.

The trial court denied the requested instruction noting that it "would be up to the legislature to create a presumption and put it in the statute or the code."

We review a trial court's refusal to submit a jury instruction under an abuse-of-discretion standard. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *see, e.g.*, *In re Commitment of Williams*, 539 S.W.3d 429, 444–46 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or definition is a correct statement of the law." *Stuteville*, 463 S.W.3d at 554. The trial court's judgment should not be reversed for charge error unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting his case on appeal. *See* TEX. R. APP. P. 44.1(a); *Thota*, 366 S.W.3d at 687; *Williams*, 539 S.W.3d at 444.

In the case before us, the trial court instructed the jury as follows:

> A "yes" answer must be based on a belief beyond a reasonable doubt. The burden of proof in this case rests solely on the [State] and never

16

shifts to [Appellant] to prove that he is not a sexually violent predator. This means the [State] must prove each element of its cause of action beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no."

The only question answered by the jury reiterated the burden of proof: "Do you find beyond a reasonable doubt that [Appellant] is a sexually violent predator." Appellant sought to augment these portions of the charge by importing a presumption applicable to a criminal proceeding. *See In re Commitment of Shield*, No. 02-24-00497-CV, 2025 WL 1271928, at *1–2 (Tex. App.—Fort Worth May 1, 2025, pet. denied) (mem. op.).

Appellant makes the following argument in support of his requested instruction:

> A commitment proceeding under the SVP Act is the unusual civil case incorporating the beyond a reasonable doubt burden of proof [standard] typically reserved for criminal cases. It was an abuse of discretion for the Court to arbitrarily deny [Appellant's] requested instruction. Nothing about the requested wording is contrary to law; just as a beyond a reasonable doubt burden gives rise to a presumption of innocence in criminal cases, it gives rise to a presumption of not sexually violent in civil commitment cases, because the burden is entirely on the State. And just as in criminal cases, it is necessary to combat the tendency of jurors to assume that the defendant would not be accused and brought to court unless guilty.

(Internal quotation marks, citations, and footnote omitted). However, Appellant cites no statutory or caselaw authority creating the presumption that he advocates.

Our sister courts have held that it is not error to refuse to submit the instruction that Appellant requested. In *In re Commitment of Jarvis*, No. 01-23-00555-CV, 2025 WL 594620, at *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2025, no pet.) (mem. op.), the court determined that the trial court does not abuse its discretion by refusing to give an instruction about a presumption that is not mandated by either

17

statute or caselaw. As noted by the court in *Shield*, "[s]imply, a trial court does not abuse its discretion by refusing an instruction that the jury apply a presumption mandated solely by [a]ppellant's concept of fairness but not by the law." 2025 WL 1271928, at \*3. Further, the Fourteenth Court of Appeals has held that an instruction stating that the State carries the burden is sufficient, and that an additional "presumption" instruction is not required because it reiterates the same concept. *In re Commitment of Mueller*, No. 14-23-00044-CV, 2023 WL 8943743, at \*11 (Tex. App.—Houston [14th Dist.] Dec. 28, 2023, pet. denied) (mem. op.).

We conclude that the instruction given by the trial court that the State carried the burden of proof under the beyond-a-reasonable-doubt standard was sufficient in this case without the additional instruction requested by Appellant. Thus, we agree with out sister courts that have held that the trial court does not abuse its discretion by refusing to give an instruction to the effect that the respondent in an SVP case is presumed not to be a sexually violent predator. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the trial court's judgment.


JOHN M. BAILEY
CHIEF JUSTICE


January 30, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.